UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:07-CV-20

| | |
|---|---|
| SAMUEL D. BUFF & KIMBERLY )<br>CALDWELL BUFF, individually )<br>and d/b/a REBEL RED KENNELS, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>DIAMOND PET FOODS, INC., )<br> )<br>Defendant. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the court on Defendant's Motion for Partial Summary Judgment and Memorandum in Support (Document #25), filed June 27, 2008, Plaintiffs' Response in Opposition to Motion for Partial Summary Judgment (Document #26), filed July 11, 2008, and Defendant's Reply to Response (Document #27), filed July 25, 2008. This matter is now ripe for disposition.

## **FACTS**

Plaintiffs Samuel and Kimberly Buff ("Buffs") are husband and wife. Although both have other full time jobs, the Buffs are also the sole proprietors of Rebel Red Kennels, and in this capacity they breed, train, and sell Redbone Coonhounds from their home in Hickory, North Carolina. Defendant Diamond Pet Foods, Inc. ("Diamond") is a Missouri corporation and the manufacturer of dog food.

Of relevance to this case, the Buffs were the owners of two specific Redbone Coonhounds, Jake and Haley. The Buffs paid approximately $300-$400 to purchase Jake as a young puppy in

1

September 2002. (S. Buff Dep. at 23.) Haley was purchased in August 2005 for approximately $800, at which time she was already more than four years old. (S. Buff Dep. at 52-53; Pls.' Compl. ¶5). Both dogs received some basic obedience training and training in coon hunting, and both were used primarily for recreational hunting. (S. Buff Dep. at 22, 52, 61-62, 102-03). Neither dog was ever used for breeding purposes, and neither dog ever produced a litter of puppies.

Jake and Haley died in December 2005 after eating "Maintenance Formula" dog food manufactured by Diamond. In their complaint, the Buffs claim that Jake became ill on December 7, 2005 and died two days later (Pls.' Compl. ¶¶10-13) and that Haley became ill the next week and died on December 19, 2005. (Pls.' Compl. ¶¶12-13.) Diamond claims that it first became aware of problems with its dog food on December 16, 2005. After testing revealed the presence of Aflatoxin[1] in certain batches of dog food manufactured at Diamond's Gaston, South Carolina facility, Diamond issued a nationwide recall of this dog food on December 20, 2005.

The Buffs filed suit in North Carolina state court in February 2007, asserting claims for negligence, breach of warranty, unfair and deceptive trade practices, misrepresentation, intentional misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. The case was removed to this court on February 21, 2007. In the motion for partial summary judgment now before the court, Diamond moves for judgment in its favor on the claims of misrepresentation, intentional misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. Diamond also asks for partial summary judgment on the issue of damages available in regards to the Buffs' other claims.

## DISCUSSION

---

[1]Aflatoxin is a toxic substance produced by fungi that grow on corn.

**A. Standard of Review**

Summary judgment is available when there are no genuine issues of material fact and judgment is appropriate as a matter of law. FED. R. CIV. P. 56(c). In considering motions for summary judgment, courts must view the facts and inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). However, the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. Anderson, 477 U.S. at 249-50. Thus, summary judgment is proper where "the facts and the law will reasonably support only one conclusion." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quotation omitted).

**B. Analysis**

In their response to Diamond's motion for partial summary judgment, the Buffs agree that summary judgment is appropriate in Diamond's favor as to the claims for misrepresentation, intentional misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages because "the discovery conducted in the present action has not produced evidence to substantiate . . . [these] claims." (Pls.' Resp. at 1, 4.) Accordingly, Diamond's motion for summary judgment on these claims will be granted.

However, the Buffs oppose Diamond's motion for partial summary judgment on the issue of damages available on the remaining claims. Specifically, the parties in this case dispute whether the Buffs may recover damages for the loss of potential puppy and stud fees as a result of Jake and Haley's deaths. To recover damages for lost profits, the Buffs must be able to prove that except for the actions of Diamond, profits would have been generated by Jake and Haley. Iron Steamer, Ltd.

v. Trinity Restaurant, Inc., 431 S.E.2d 767, 770 (N.C. Ct. App. 1993). Any lost profits must be proven to a "reasonable certainty," and "damages for lost profits will not be awarded based upon hypothetical or speculative forecasts of losses." Id. When establishing damages, the burden of proof is always on the party claiming injury. Id.

In their depositions, the Buffs admit that neither Jake nor Haley was ever used for breeding. As a result, the Buffs are not sure that the two dogs were even capable of reproducing. (S. Buff Dep. at 22-23, 30-31.) Moreover, no definite plan or agreement existed to breed either of the dogs at the time of their deaths. In fact, prior to Jake and Haley's deaths, Rebel Red Kennels had never hired any dog out as a sire nor bred any puppies for sale,[2] and there is no evidence in the record that the Buffs intended to breed either Jake or Haley. (S. Buff Dep. at 47.) Because the Buffs are unable to provide any evidence of their intent to breed either Jake or Haley, and because the Buffs are unable to provide any evidence of past profits derived from Jake and Haley as a guide to future earnings, their claim for lost profits must fail. See Iron Steamer, 431 S.E.2d at 771. Thus, the Buffs will be precluded from presenting any evidence at trial relating to damages for lost profits based on speculation about the potential value of the dogs as either sires or breeders.

In the face of this combination of law and facts, the Buffs concede in their Response that "it may be too speculative to allow Plaintiffs to rely on lost profits from future litters produced by Jake or Haley as a distinct component of their damages." (Pls.' Resp. at 4.) However, the Buffs contend that they still should be allowed "to present evidence of the dogs' intrinsic breeding potential as a component of their total value." Id. The Buffs argue that this evidence is appropriate because it

---

[2]In the succeeding years, at least two of the Buffs' female dogs have produced litters of puppies, some of which were sold. (S. Buff Dep. at 38-45.)

4

"would look to the [value of the] dogs themselves rather than to the sales price of future litters which would have been produced by the dogs." Id.

Under North Carolina law, dogs are treated as personal property. Altman v. City of High Point, 330 F.3d 194, 205 (4th Cir. 2003) (discussing and citing relevant North Carolina cases and statutes). As such, the proper measure for damages is the fair market value of the dogs prior to their injury. Sprinkle v. N.C. Wildlife Res. Comm'n, 600 S.E.2d 473, 477 (N.C. Ct. App. 2004). Like damages for lost profits, these damages must also be based on more than mere speculation. See DiDonato v. Wortman, 358 S.E.2d 489, 493 (N.C. 1987) (citing cases). At present, the court will leave for trial any ruling on the admissibility of evidence proffered to establish the fair market value of the dogs in this case. However, the court notes that although evidence of the market value of a "normal" Redbone Coonhound likely will be allowed without requiring specific proof of the fertility of Jake and Haley, the court will not permit proof of fair market value to become an indirect method of establishing lost profits.

## CONCLUSION

Because the Buffs concede that summary judgment is appropriate on the following claims, and because the Buffs have offered insufficient evidence to support these claims, Diamond's motion for summary judgment is granted on the Buffs' claims of misrepresentation, intentional misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. In addition, Diamond's motion for partial summary judgment is granted as to the Buffs' claims for lost profits as a component of damages on the remaining counts. However, the exact evidence admissible for proving the fair market value of the dogs is left for the determination of the court at trial.

5

**WHEREFORE**, for the foregoing reasons, Defendant Diamond Pet Foods, Inc.'s motion for partial summary judgment is **GRANTED**.

Signed: March 30, 2009

Richard L. Voorhees
United States District Judge